[No. B045201. Second Dist., Div. Four. Oct. 24, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
KING BAIL BOND AGENCY, Defendant and Appellant.

COUNSEL

Celes King III, Nunez & Bernstein and Mark L. Bernstein for Defendant and Appellant.

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, and Gary N. Miller, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**GOERTZEN, J.—** ■■ ■ ■ Appellant King Bail Bond Agency (appellant), the agent-indemnitor of American Bankers Insurance Company, appeals from: (1) an order denying its motion to vacate a previous order forfeiting bail and to exonerate the bail bond; and (2) the subsequent summary judgment on bail forfeiture.[1] For the reasons discussed herein, we reverse the order denying appellant's motion to vacate the previous order forfeiting bail and the summary judgment entered in favor of respondent County of Los Angeles (County).

### FACTS

On June 29, 1987, a complaint was filed, charging Mary Alice Sanchez with child detention with right to custody. (Pen. Code, § 278.5, subd. (b).) Bail was set at $250,000 and subsequently was reduced to $100,000. On December 11, 1987, Ms. Sanchez was held to answer and, on the People's motion, the bail again was increased to $250,000. Ms. Sanchez was remanded, and her $100,000 bail was exonerated.

On December 14, 1987, appellant posted a bail bond issued by American Bankers Insurance Company in the amount of $250,000 for Ms. Sanchez's release. It is this bail bond which is the subject of this appeal.

During the course of the jury trial, Ms. Sanchez had been instructed by the court not to address the jury and not to make any mention of her claim that her former husband had sexually molested their child. Ms. Sanchez ignored the court's order. While being questioned by the People, the following colloquy between Ms. Sanchez and the court occurred: "THE COURT: What you have to do is try to control yourself, Ms. Sanchez. [¶] THE WITNESS: He's trying to confuse me. [¶] THE COURT: He's not. [¶] THE WITNESS: They have covered up who sexually abused my daughter, and you know it too, and they know it. And they hide the physical evidence, and whatever. [¶] Why didn't they prosecute him? Why isn't he in jail? [¶] Oh, no. Right. Because he's a police officer, that's why."

The court found Ms. Sanchez in direct contempt of court and sentenced her to five days in jail, ordering her remanded at the end of the day and

---

[1] A summary judgment against a surety is a consent judgment which normally is not appealable. However, if the judgment is not entered in compliance with the consent given, the judgment is appealable. (*People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 219 [119 Cal.Rptr. 917].)

disallowing any bail. The court subsequently stayed the five-day sentence until the next day or until the jury returned a verdict.

On Monday, November 7, 1988, the jury returned the verdict of not guilty and was excused. Upon the request of Ms. Sanchez's counsel that she be allowed to serve the five-day contempt sentence on a weekend, the court ordered her to return on the following Thursday, November 10, 1988.

On November 10, 1988, Ms. Sanchez failed to appear. The court ordered a bench warrant to issue with no bail and ordered the $250,000 bail forfeited. The clerk's notice of forfeiture was mailed on December 7, 1988.

### PROCEDURAL HISTORY

On February 23, 1989, the surety served and filed its notice of motion to exonerate bail. The surety argued that the bail undertaking was limited to coverage of the Penal Code section 278.5, subdivision (b) charge; its obligation on the bail undertaking did not embrace ensuring Ms. Sanchez's appearance on the contempt charge; upon Ms. Sanchez's acquittal, the bond undertaking was exonerated by operation of law; the stay of commitment on the contempt charge, even if embraced within the bail bond, exonerated the undertaking.

On April 21, 1989, the hearing on the matter was held and oral argument presented. The court took the matter under submission and on May 19, 1989, denied the motion to exonerate bail. The court reasoned that as the contempt had occurred during the course of the trial, the court retained control of Ms. Sanchez, regardless of the jury verdict; that had Ms. Sanchez appeared on the day she had been ordered, the court had several options available to it; and that the contempt proceeding fell squarely within the language of Penal Code section 1305,[2] providing for presence of a defendant upon "any other occasion when his or her presence in court is lawfully required."

On August 30, 1989, summary judgment on the bail bond forfeiture was signed and entered.

---

[2] In pertinent part, Penal Code section 1305, subdivision (a), provides: "If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his or her presence in court is lawfully required, or to surrender himself or herself in execution of the judgment, the court must direct the fact to be entered upon its minutes, and, unless within 15 court days from arraignment no complaint has been filed or the charges have been dismissed, the undertaking of bail, . . . must thereupon be declared forfeited . . . ."

## DISCUSSION

■ Appellant reiterates the arguments it raised below and further asserts that bail in the amount of $250,000 for misdemeanor contempt is excessive and in violation of the California Constitution.[3]

Because we find that the contempt proceeding is a separate and distinct action from the criminal proceeding in which it occurred and not contemplated within the terms of the bond undertaking, we reverse.

■ It is well established that "[c]ontempt proceedings are separate and distinct and no part of the original case out of which they arise." (*Bank of America v. Carr* (1956) 138 Cal.App.2d 727, 733 [292 P.2d 587]; Pen. Code, § 166.) ■ Likewise, it is the accepted rule that a surety cannot be held beyond the express terms of his or her contract. (*ITT Diversified Credit Corp. v. Highlands Ins. Co.* (1987) 191 Cal.App.3d 301, 305 [236 Cal.Rptr. 433].)

■ The pertinent terms of the contract at issue are as follows: "[The surety] hereby undertakes that the . . . defendant will appear in the above-named court on the date above set forth to answer any charge in any accusatory pleading based upon the acts supporting the complaint filed . . . and as duly authorized amendments thereof, in whatever court it may be prosecuted and will at all times hold him/herself amenable to the orders and process of the court and if convicted, will appear for pronouncement of judgment or grant of probation."

By these terms, the surety undertakes that the defendant will appear to answer any charge in any accusatory pleading *based upon the acts supporting the complaint.* Here, the acts supporting the complaint are those related to Ms. Sanchez's illegal detention of her child; a finding of contempt does not relate to this charge.

■ When the contract states that the defendant will hold himself or herself "amenable to the orders and process of the court," it means that the surety insures the defendant's *ongoing attendance* to answer the charges against him or her. It does not contemplate the imposition of sanctions upon the surety for the defendant's failure to obey a court order not directly involving the defendant's nonappearance.

---

[3] By letter brief, dated September 19, 1990, appellant cited *In re McKinney* (1968) 70 Cal.2d 8 [73 Cal.Rptr. 580, 447 P.2d 972], to support its further assertion that the trial court here lacked subject matter jurisdiction to impose sentence pursuant to Penal Code section 166. While *In re McKinney* does so hold, it does so only when the superior court is acting pursuant to this section when there is no concurrent felony charge against the defendant. That is not the case at bench. Here, Ms. Sanchez was on trial for a felony, and the jurisdiction which the court exercised over her encompassed its authority to find her in contempt. In this situation, the court has jurisdiction to impose sentence pursuant to Penal Code section 166. (Pen. Code, § 954; *In re McKinney, supra,* 70 Cal.2d at p. 13.)

■ Finally, the contract provides that the surety undertakes that the defendant will appear for pronouncement of judgment or grant of probation involving the initial complaint or amendment. As required, Ms. Sanchez appeared throughout the trial and was present when the jury returned its not guilty verdict. This provision does not include pronouncement of judgment on a charge based on acts other than those supporting the initial complaint; it does not include appearance for a contempt judgment totally unrelated to the illegal detention of Ms. Sanchez's child.

The court, in fact, recognized that the contempt charge was separate from the criminal charge and required separate bail when it initially held Ms. Sanchez in contempt. At that time, the court stated: "She's remanded at the end of today, 5 days, contempt of court, no bail. Straight sentence."

Since Ms. Sanchez appeared to answer the criminal charges against her and was acquitted by the jury, the $250,000 bail was exonerated. (Pen. Code, § 1195.)

While we understand the frustration experienced by the court when Ms. Sanchez responded to the court's generosity with a proverbial raspberry (her failure to appear), we cannot ignore the long-established rules that the contempt proceeding is separate from the underlying action and that a surety is bound only by the terms of his or her contract.

Having reached this conclusion, we need not and do not discuss appellant's other contentions.

## DISPOSITION

The order denying appellant's motion to vacate a previous order forfeiting bail and to exonerate the bail bond is reversed. The court is ordered to enter a new and different order granting the motion (1) to vacate its previous order forfeiting bail and (2) to exonerate bail.

The summary judgment on bail forfeiture is reversed.

Appellant is awarded costs on appeal.

Woods (A. M.), P. J., and Epstein, J., concurred.