Filed 3/14/14  P. v. American Contractors Indemnity Co. CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>AMERICAN CONTRACTORS<br>INDEMNITY COMPANY,<br><br>　　　　Defendant and Appellant. | H038148<br>(Santa Clara County<br>Super. Ct. No. CC964365) |

　　　　American Contractors Indemnity Company (American Contractors) appeals from the trial court's denial of its motion to set aside summary judgment, discharge forfeiture and exonerate bail.  American Contractors argues the trial court erred in denying its motion because the hearing at which the defendant/bailee failed to appear was a contempt proceeding, separate and apart from his pending criminal case, and thus the trial court lacked jurisdiction to order forfeiture of his bail bond.

　　　　For the reasons discussed below, we agree the trial court lacked jurisdiction to forfeit bail and will reverse.

## I.　　FACTUAL AND PROCEDURAL BACKGROUND

　　　　Defendant Ramon Brown was charged with multiple felonies in Santa Clara County Superior Court No. CC964365.  On December 23, 2009, American Contractors posted a $100,000 bail bond (No. AUL-2067407) to secure Brown's release from custody in that case.  Brown appeared for a master trial calendar hearing on December 6, 2010.

The judge, the Honorable Philip H. Pennypacker, indicated Brown's case was on "stand-by" and said Brown would need to return to court the following week.

After the court heard other cases, however, Brown was recalled. Judge Pennypacker said Brown had been observed downstairs "taking pictures of the security set up in the downstairs department area [*sic*] of this court which is extremely serious." The court stated it "considers what [Brown] has done to be a violation of a court order not to take pictures inside of the court without written permission." Brown's cell phone, which he had been using to take these photos, was seized and Judge Pennypacker directed Brown to return to "my department tomorrow morning with your lawyer at nine o'clock." Judge Pennypacker concluded the proceedings by stating he "need[ed] to figure out whether there's a court order."[1]

Brown did not appear at the hearing the next day (December 7, 2010), and the court issued a bench warrant for his arrest. The court noted "the record should be clear that yesterday the court asked that this matter be brought up to this department for hearing regarding contempt of . . . Brown because he had taken pictures with his iPhone of the security arrangement available in the court. It is in direct violation of the rules of court and any orders that forbid photography inside of the courthouse." At the conclusion of the hearing, the court ordered the forfeiture of Brown's $100,000 bail.

Notice of bail forfeiture was filed on December 9, 2010, advising that forfeiture would become final on June 6, 2011. On February 1, 2012, the court entered judgment against American Contractors, forfeiting the $100,000 bail.

American Contractors moved to set aside summary judgment, discharge forfeiture and exonerate bail, but that motion was denied by written order. In that order, the court noted that Judge Pennypacker, who had ordered Brown to return to court on December

---

[1] Though he did not specifically say so, it appears Judge Pennypacker was referring to an order prohibiting unauthorized photography inside the courthouse.

7,[2] "did not specify the nature of the hearing." Because the purpose of the December 7 hearing was "undefined by the Court at the time the order was made, [and] prior to pronouncement of judgment," the order to appear was "lawful" and Brown's failure to appear justified forfeiture of bail.

## II. DISCUSSION

### A. Standard of review

An order denying a motion to vacate the forfeiture of a bail bond is normally reviewed for abuse of discretion. (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5.) However, where the evidence is not in dispute and the primary issue is one of statutory construction or contract interpretation, the standard of review is de novo. (*People v. American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 350.)

The question on appeal in this case is whether the trial court could forfeit bail when Brown, who was on bail on specified criminal charges, failed to appear at a hearing related to his acts of taking photos in the courthouse in violation of a court order. The evidence is not in dispute and, accordingly, our review is de novo.

### B. The trial court erred in refusing to set aside the judgment

A bail bond is in the nature of a contract between the government and the surety through which the surety guarantees that the defendant will appear under risk of forfeiture of the bond. (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356.) The scope of the surety's risk is defined by the terms of the bond agreement and applicable statutes. (*People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 668.) As appellate courts have noted, "[t]he forfeiture or exoneration of bail is entirely a statutory procedure, and forfeiture proceedings are governed entirely by the special statutes applicable thereto. [Citation.] . . . Because the law abhors forfeitures, these

---

[2] American Contractors' motion to set aside summary judgment was heard and decided by the Honorable Vanessa A. Zecher.

3

statutes are to be strictly construed in favor of the surety." (*People v. Ranger Ins. Co.* (1998) 66 Cal.App.4th 1549, 1552.)

"[Penal Code] [s]ection 1305, subdivision (a) requires that bail be forfeited if, without sufficient excuse, a defendant fails to appear for arraignment, trial, or judgment, or upon any other occasion when his or her presence in court is lawfully required." (*People v. Ranger Ins. Co.*, *supra*, 66 Cal.App.4th at p. 1552.) "A defendant's presence is 'lawfully required' when there is 'a specific court order commanding his [or her] appearance at a date and time certain' [citation], or when a defendant has notice because he or she is present when the date and time for a mandatory appearance are set." (*People v. Ranger Ins. Co.* (1992) 6 Cal.App.4th 1301, 1304.)

Since the object of bail is to insure the attendance of the bailee in connection with the proceedings which led to the issuance of the bond in the first place, bail must be forfeited when the bailee breaches his obligations. (*People v. North Beach Bonding Co.*, *supra*, 36 Cal.App.3d at p. 675.) Conversely, "[w]hen the nonappearance is not one which the bail was required to or did cover, it would penalize the surety unwarrantedly to permit recovery on the undertaking." (*Ibid.*) An order purporting to forfeit bail for an obligation not undertaken under the bail contract is "not erroneous but void." (*People v. Doe* (1959) 172 Cal.App.2d Supp. 812, 817.)

It is undisputed that Brown was ordered to appear before the court, with his attorney, at 9:00 a.m. on December 7, 2010. It is also undisputed that he was ordered to appear because the court "consider[ed] what [Brown] has done to be a violation of a court order not to take pictures inside of the court without written permission." The only question is whether the court's order to appear for a hearing relating to Brown's possible violation of a court order was the legal equivalent of an order directing him to appear for matters related to the ongoing criminal case against him. We think it is not.

"While a contempt proceeding, for convenience, is presented in the cause out of which it grows, it is a separate and distinct matter, and no part of the original case."

4

(*People v. Durrant* (1897) 116 Cal. 179, 209.) The hearing on the morning of December 7, 2010, was for the purpose of determining whether or not Brown could be held in contempt of a court order not to take photos inside the courthouse. That contempt proceeding was entirely unrelated to Brown's pending criminal case.

*People v. King Bail Bond Agency* (1990) 224 Cal.App.3d 1120 (*King*) is instructive. In *King*, the defendant (and bailee) was on trial for "child detention with right to custody" in violation of Penal Code section 278.5, subdivision (b). (*King*, *supra*, at p. 1122.) During her trial, the defendant violated a court order by accusing her former husband, in the presence of the jury, of molesting their child. The court found her in contempt and ordered her to serve five days in jail, but stayed her sentence until after the jury returned with a verdict on the child detention charge. The jury found the defendant not guilty and was excused. Defendant was ordered to return to court three days later to serve her contempt sentence, but she failed to appear. The court ordered the bail forfeited, and the surety's motion to exonerate the bail on grounds that its obligation did not extend to the contempt proceedings was denied.

The court of appeal reversed, finding the contempt proceedings against the defendant were " 'separate and distinct and no part of the original case out of which they arise.' " (*King*, *supra*, 224 Cal.App.3d at p. 1124, quoting *Bank of America v. Carr* (1956) 138 Cal.App.2d 727, 733.) By providing bail, a "surety undertakes that the defendant will appear to answer any charge in any accusatory pleading *based upon the acts supporting the complaint*." (*King*, *supra*, at p. 1124.) Because the acts supporting the complaint against the defendant were those related to her allegedly illegal detention of her child, the court's finding of contempt based on her violation of its in limine order was not related to that charge. "When the contract states that the defendant will hold himself or herself 'amenable to the orders and process of the court,' it means that the surety insures the defendant's *ongoing attendance* to answer the charges against him or her. It does not contemplate the imposition of sanctions upon the surety for the

5

defendant's failure to obey a court order not directly involving the defendant's nonappearance." (*Ibid*.) Consequently, the appellate court reversed, holding that a contempt proceeding, even when the contempt occurs within an ongoing criminal proceeding, is a separate and distinct action from that criminal proceeding and therefore does not fall within the terms of the bond undertaking.

The People seek to distinguish *King* on the grounds that the criminal proceedings in that case were complete and the defendant acquitted at the time she was ordered to appear on the contempt judgment. In this case, criminal charges were still pending against Brown when he was ordered to appear and American Contractors was therefore still responsible for insuring his appearance. This distinction has no legal significance.

Here, when Brown appeared for a master trial calendar hearing, he was told his criminal case was on standby and he would need to return next week. This initial appearance was lawfully required, since it was directly related to the criminal charges covered by his bond. Brown was subsequently brought before the court that same day, where Judge Pennypacker advised him that he considered Brown taking pictures inside the courthouse to be a violation of a court order. This conduct was entirely separate and unrelated to the acts forming the basis of the criminal charges against Brown. The only possible connection between the two was that Brown was only in the courthouse and able to take these photos because he had been ordered to appear that morning in his criminal case.

After he was brought back before the court on December 6, he was not charged with contempt nor did the court indicate it was holding him in contempt at that time, apparently because the court was unsure whether there was actually a court order prohibiting Brown's conduct. Instead, Brown was ordered to appear the following morning, presumably where the court would have determined whether to charge him with contempt. It makes no difference that contempt charges had not been formally filed against Brown at the time the court ordered him to appear the next morning. It is clear

6

from the record that the court required Brown's appearance on December 7, 2010, not because of his pending criminal case, but because the court intended to possibly hold him in contempt.

In determining the limits of the surety's risk, we look to the provisions of the bond itself, along with applicable statutes. (*People v. North Beach Bonding Co.*, *supra*, 36 Cal.App.3d at p. 668.) American Contractors undertook to insure Brown's appearance to answer the charges set forth in the accusatory pleading as well as "all dully [*sic*] authorized amendments thereof." Its obligations did not extend beyond those charges. When the court ordered Brown to appear for a hearing related only to a potential additional charge of contempt of court, rather than to his pending criminal case, his presence for that hearing was not "lawfully required" in connection with American Contractors' bond. His subsequent failure to appear at that hearing was not a basis for forfeiting bail.

## III.    DISPOSITION

The order denying American Contractors' motion to set aside summary judgment, discharge forfeiture and exonerate bail is reversed. The trial court is directed to vacate its prior order and enter a new order granting the motion. American Contractors is entitled to its costs on appeal.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

7